IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| YAHYA TALAB, Individually and on Behalf of All Others Similarly Situated,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>BOARD OF TRUSTEES OF DUKE UNIVERSITY,<br><br>　　　　　　　Defendant. | Civil Action No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Yahya Talab ("Plaintiff"), individually and on behalf of all others similarly situated (collectively, the "Class" as defined below), bring this class action complaint against the Board of Trustees of Duke University ("Duke" or "Defendant").

## NATURE OF THE ACTION

1. This is a class action brought to compensate similarly situated Duke University ("Duke") students and/or their parents or guardians who paid tuition and fees for the Spring 2020 academic semester and who (i) did not receive their bargained-for educational and other services and (ii) have not been refunded a prorated portion of their tuition and fees after Duke ceased providing such services to students during the Spring 2020 academic semester due to Coronavirus Disease 2019 ("COVID-19").

2. Specifically, as a result of Defendant's wrongful acts and unfair business practices alleged herein, Plaintiff and the proposed Class (i) have not received any refund or reimbursement for the unused services for which they paid; and/or (ii) did not receive any refund or reimbursement for the decreased value of the education they received from Duke when their classes transitioned from in-person instruction at the Duke campus facilities to an entirely

remote, online learning format.

3. Based in North Carolina, Duke is one of the nation's premier private universities. Duke currently enrolls nearly 6,700 undergraduate and approximately 9,000 graduate students, and, altogether, serves a total of more than 16,600 students.

4. As of 2019, Duke had a $8.5 billion endowment, and was recently recognized as one of the 15 richest universities in the country.[1] Duke reported having more than $21.5 billion in assets in 2019.[2] A sizable portion of Duke's assets comes from the tuition and fees that its students pay. In 2019, Duke collected $519 million in student tuition and fees.

5. For the 2020-2021 academic year, the estimated annual Duke undergraduate tuition will be $60,408. For graduate students, estimated annual tuition and fees for the 2020-2021 academic year will be $63,167.

6. In response to COVID-19, on March 10, 2020, Duke President Vincent E. Price announced that all on-campus classes were being suspended until further notice and transitioned to remote instruction for all undergraduate, graduate, and professional schools. Undergraduate Spring Break was extended from March 15th to March 22nd, and all students who were off campus for Spring Break were advised to not return to campus if at all possible, and those students who needed to return to campus were required to register with Student Affairs so Duke could control the on-campus population.

7. The next day, March 11, 2020, Dean of the Duke Graduate School and Vice Provost for Graduate Education Paula D. McClain wrote to all graduate students following up on

---

[1] https://thebestschools.org/features/richest-universities-endowments-generosity-research/ (last visited May 12, 2020).
[2] https://resources.finance.duke.edu/resources/docs/Duke_2019_single_audit_report_final.pdf (last visited May 12, 2020).

Price's announcement and confirming that all graduate classes would be transitioned online. Graduate school Spring Break also was extended through March 22, 2020.

8. Duke President Price acknowledged the problems with moving all in-person classes to remote learning and closing down Duke's campus, stating "We know this presents a significant disruption to everyone's studies, research, and work, and also prompts many questions and concerns." President Price advised that residential students would receive a prorated reimbursement of unused housing and dining fees but provided no guidance or offers to reimburse any portion of students' tuition or fees.

9. Further compounding students' frustration is the fact that Duke was eligible for, but declined to accept, ***$6.7 million*** in government funding through the Coronavirus Aid, Relief, and Economic Security Act (CARES) Act, half of which is federally mandated to go toward students who are in need of emergency financial assistance.[3]

10. Despite the provision of an entirely remote college experience, Defendant refuses to refund or reimburse Plaintiff and similarly situated Duke students and their parents or guardians the fees they paid for services they are not being provided, events they cannot attend, and programs and activities that have been curtailed, discontinued, or closed.

11. Defendant also refuses to refund or reimburse Plaintiff and the Class for tuition paid for online classes that Defendant is currently providing to them that are substantially less valuable than the in-person classes that Defendant had advertised and promised. This is true in spite of the fact that Duke has recognized the lesser value of online-only courses by cutting

---

[3] https://www.dukechronicle.com/article/2020/05/duke-university-why-did-reject-million-cares-act-funding (site last visited May 13, 2020).

3

tuition by at least 30% for all Summer program courses after moving all of those courses online.[4]

12. Plaintiff and other Class members have lost the benefits of the education, services, and other experiences that Defendant promised. Despite failing to fulfill its obligations, Defendant is currently unlawfully retaining and refusing to fully or partially refund Plaintiff's Spring 2020 semester tuition and fees, despite the dramatically lower quality and less valuable education and services now being provided.

13. Essentially, students have paid Defendant for high-quality, in-person instruction that is no longer available to them, access to buildings they can no longer enter, technology, programs and services that Defendant is no longer providing, and activities that are no longer available. Defendant is thus profiting from COVID-19 while further burdening students and their families—many of whom have been laid off, become ill, lost loved ones, or are otherwise already bearing the brunt of the COVID-19 pandemic. The result is an enormous windfall to Defendant. Both contract and equity demand that Defendant disgorge its ill-gotten funds.

14. Plaintiff and similarly situated Duke students and their parents or guardians are entitled to have Defendant disgorge fees they paid for unused services and to refund their tuition for substandard classes. Plaintiff brings this class action for injunctive, declaratory, and equitable relief, and any other available remedies, resulting from Defendant's illegal, inequitable, and unfair retention of the funds paid by Plaintiff and the other students and their parents or guardians in the proposed Class.

15. Specifically, this lawsuit seeks disgorgement and monetary damages in the amount of prorated, unused amounts of tuition and fees that Plaintiff and the other Class

---

[4] https://www.dukechronicle.com/article/2020/04/duke-university-summer-session-cut-cost-online-courses (site last visited May 13, 2020).

4

members paid, the benefits of which will not be provided by Defendant. This includes the difference in value between the live in-person classes for which Spring 2020 semester students enrolled and paid, compared to the lesser online versions of classes that Defendant has been providing to them since mid-March 2020.

## PARTIES

### A. Plaintiff

16. Plaintiff Yahya Talab is a citizen of the State of Michigan. He is a graduate student currently in his first year at Duke and is expected to receive his Master's degree in Economics in May 2021.

### B. Defendant

17. Duke University, located in Durham, North Carolina, was chartered and organized "to acquire, own, operate, provide, maintain and perpetuate an institution of higher learning or other institutions of learning and all properties, facilities and services necessary or appropriate in connection therewith."[5] The Board of Trustees is the governing body of Duke, providing oversight of and having fiduciary responsibility for Duke's academic, financial, and business affairs.[6] Defendant thus provides Plaintiff Talab and members of the Class with campus facilities, in-person classes, as well as a variety of other facilities, services, and programs at Duke and for which Defendant charged Plaintiff and members of the Class.

## JURISDICTION AND VENUE

18. This Court has original jurisdiction under 28 U.S.C. § 1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005, because the matter in controversy exceeds $5,000,000,

---

[5] https://trustees.duke.edu/governing-documents/amended-and-restated-charter-duke-university (site last visited May 13, 2020).
[6] *Id.*

5

exclusive of interests and costs, and because at least one member of the Class defined below is a citizen of a state other than North Carolina.

19. This Court has personal jurisdiction over Defendant because Defendant maintains its principal place of business in this judicial District.

20. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b)(1) and (b)(2), because Defendant resides in this District and a substantial part of the acts or omissions giving rise to this Complaint occurred in this District.

## FACTUAL ALLEGATIONS

21. Duke is one of the nation's most prestigious universities, offering more than 50 major and 50 minor programs of study and 23 certificate programs across its two undergraduate schools, Trinity College of Arts and Sciences and Pratt School of Engineering. Duke touts the opportunity to combine major, minor, and certificate programs into "437,989 unique academic combinations."[7] Duke also offers master's and doctoral degrees in more than 80 departments and programs of study.[8]

22. In the 2020 edition of U.S. News & World Report's Best Colleges, Duke was ranked as the tenth "Best National University." It also tied for the seventeenth spot in the same rankings for best undergraduate teaching.

23. Duke is also among the nation's most expensive private secondary educations, and estimates that for the 2020-2021 academic year, the total cost of undergraduate attendance is $81,302, an amount which exceeds the median household income in the United States.

24. Defendant markets Duke and justifies its high costs by touting the vitality of its

---

[7] https://admissions.duke.edu/academic-possibilities/ (site last visited May 13, 2020).
[8] https://gradschool.duke.edu/academics/programs-degrees (site last visited May 13, 2020).

6

"all-encompassing, interactive, and vibrant" educational experience on an 8,600+-acre campus where "the kinetic energy of connections forged, creativity sparked, and ideas born…inspires passion and action."[9]

25. In highlighting its undergraduate programs, Duke touts its 8:1 student-to-faculty ratio and "countless opportunities to nurture personal connections."[10] The school notes that "At Duke, you'll be surrounded by some of the world's brightest minds. But you won't just be studying with them-you'll be working with them. After all, *the world's toughest problems won't be solved by isolated individuals* but rather through interdisciplinary exploration, unconventional thinking, and serious collaboration."[11] Every Duke student is allotted $70 per semester to invite a faculty member to dine with them at various locations around campus to help establish lasting relationships that might not have developed in the classroom."[12]

26. Duke also highlights its extensive on-campus facilities, which include "collaborative study spaces, classrooms, and seminar rooms equipped with whiteboards and the latest technology to help promote interdisciplinary, team-based, and data-driven research at Duke," the 70,000 square-foot Rubenstein Arts Center housing "multipurpose studios, seminar classrooms, a makerspace, lounge, theater, and more," and lab facilities, such as the Innovation Co-Lab, "which houses cutting-edge tools such as 3-D printing, YR, and biometrical analysis."[13]

27. Similarly, the Graduate School at Duke also touts its "community" and on-campus connections between students and faculty: "The hallmark of graduate education at Duke is a rich blend of deep, specialized knowledge in a field of study, intersecting with the frontiers

---

[9] https://admissions.duke.edu/campus-life (site last visited May 13, 2020).
[10] https://admissions.duke.edu/academic-life/ (site last visited May 13, 2020).
[11] *Id.*
[12] *Id.*
[13] *Id.*

7

of other fields. … Collaborative research and study groups of faculty and graduate students coalesce around problems and themes in many university settings that extend beyond the boundaries of individual departments and programs."[14]

28. The Graduate School also markets to students by stating: "To come to Duke University for graduate study is to be *immersed in the welcoming environment of an educational community* dedicated to the pursuit and production of knowledge that will serve the broader society…. [A]t the Duke University Graduate School, *among your fellow graduate students*, and within the broader community of Durham, you will find the people, commitment, support, and resources to help you succeed and enjoy the journey."[15]

29. Because of the high-quality, hands-on, and proven academic opportunities that it advertises, and on-campus experiences and services it guarantees, Defendant has charged substantial tuition and fees for a Duke education.

30. For example, after Plaintiff registered for graduate courses for the Spring 2020 semester and Defendant accepted Plaintiff's registration, Defendant charged Plaintiff $27,840.00 in tuition, as well as a $10 Grad Student Services Fee, an $18.25 Grad Student Activity Fee, a $158 Recreation Fee, and a $417 Health Fee.[16] After receiving a scholarship, Plaintiff had to take out loans of more than $24,500 to pay for his tuition and fees for the Spring 2020 semester.

31. Plaintiff has not attended any in-person classes since Spring Break began on March 7, 2020. Instead, since classes resumed on March 23, 2020, all of his classes have been administered online.

---

[14] https://gradschool.duke.edu/about/deans-welcome (site last visited May 13, 2020).
[15] https://gradschool.duke.edu/about/graduate-education-duke (site last visited May 13, 2020).
[16] Undergraduates at Duke are charged a $312.50 Student Services Fee and a $137.75 Student Activity Fee.

8

32. Plaintiff has neither received nor been offered any refund or reimbursement for the in-person tuition or fees that he paid for the Spring 2020 semester at Duke.

33. Defendant, through President Price, has acknowledged that Duke was "engaged in what may be the greatest experiment in our university's history—indeed, in the history of higher education." Duke has conceded that "[t]he coming weeks won't be easy, and there will of course be growing pains" and has asked for students' "flexibility as we transition to new models of teaching, enabled by technology and accelerated by necessity."[17] Duke further acknowledged that *if* its experiment was done right, students would have "the tools you need to complete your programs and keep learning…"[18]

34. It is not at all clear that Duke is getting its experiment right. Duke professors were advised to modify course syllabi and simplify assignments in order to accommodate remote teaching. Professors were provided links to learn on the fly how to use Zoom software for classes.[19] Many professors have simply pre-recorded lectures and posted them online. But according to Duke professors, recorded lectures are like "speaking into dead space," and even "live" Zoom classes are like "talking to a wall of black boxes" because many students have their computers' camera turned off.[20]

35. As one Duke professor observed:

> "You got a bunch of people trying to make video lectures, often with tools we've never used before. Professors sometimes can't even manage to run PowerPoint on the projector," she said. "If we had known this was coming, which of course we didn't, we could've been better prepared and made that transition a little smoother."[21]

---

[17] https://keeplearning.duke.edu/ (site last visited May 13, 2020).
[18] *Id.*
[19] https://keepteaching.duke.edu/strategies/ (site last visited May 13, 2020).
[20] https://www.dukechronicle.com/article/2020/04/duke-university-class-dead-space-research-professors-impacts-coronavirus-online-class (site last visited May 13, 2020).
[21] *Id.*

9

36. The result of this haphazard approach is that Plaintiff and Class members have been provided with a second-rate online substitute for the hands-on, in-person coursework in which they enrolled—and for which they paid.

37. Yet despite providing students with an admittedly experimental educational experience, to date Duke has refused to provide students with prorated reimbursements of tuition and fees. In fact, Duke's Frequently Asked Questions (FAQ) page on its website does not even *mention* tuition or fee refunds in any way.[22] In effect, Defendant has placed the entire financial burden of its "experiment" onto Plaintiff and the Class.

38. As a result of the closure of Duke, Defendant has not delivered the educational services, facilities, programs, and opportunities for which Plaintiff and the Class contracted and paid. Plaintiff and the proposed Class are therefore entitled to a full refund of the portion of the fees and tuition for the latter half of the Spring 2020 semester that Defendant did not provide, or which it provided in a severely diminished manner.

39. The remote, online learning "classes" offered to Spring 2020 students since March deprive students of in-person learning from their peers and school faculty. The move to these remote classes also deprives students of access to the facilities, materials, and opportunities only offered on Duke's physical (as opposed to virtual) campus, including laboratory and research experience, use of on campus facilities (*e.g.*, the gym and libraries), and use of on campus services and events (*e.g.*, attending sporting events, end-of-year programs and events, and various student services).

40. The online classes Plaintiff and his peers have been provided are not equivalent to, and are worse than, the in-person, campus experience that Plaintiff and other Duke students

---

[22] https://financialaid.duke.edu/coronavirus (site last visited May 13, 2020).

10

Case 1:20-cv-00480-WO-JEP   Document 1   Filed 06/01/20   Page 10 of 18

chose for their university education. The tuition and fees that Defendant charged were predicated on access to and constant interaction with and feedback from peers, mentors, professors, and guest lecturers; access to technology, libraries, and laboratories; opportunities to attend or participate in spectator sports and athletic programs; access to student government and health services; and participation in extracurricular groups and learning, among other things.

41. The online classes offered to Plaintiff and his peers are also of substantially lower quality and are objectively worth less than the in-person courses for which they enrolled and paid.

42. Duke's post-COVID-19 online student offerings do not even come close to comparing with Duke's in-person course experiences. Instead, Plaintiff and Class members have been forced into overpriced bubble-gum and duct-tape substitutes. Yet, despite offering students inferior, poorly planned, and poorly executed online courses, Defendant refuses to issue refunds to Plaintiff and thousands of other students.

43. Moreover, Defendant has refused to issue refunds for mandatory fees as well. Since the campus shut-down Plaintiff and the Class have not received the benefits of these fees, nor been offered a refund for them.

44. Through this lawsuit, Plaintiff seeks—for himself and the other Class members—Defendant's disgorgement and/or refund of the prorated, unused portion of her fees, proportionate to the amount of time that remained in the Spring 2020 semester when the campus was shut down and classes moved online, as well as a refund of a percentage of tuition based on students no longer being able to attend classes in-person and instead being offered a sub-par online learning experience.

## CLASS ACTION ALLEGATIONS

45.     Pursuant to Fed. R. Civ. P. 23(a), (b)(2), (b)(3), and/or (c)(4), Plaintiff brings this action on behalf of himself and the following Class:

> All persons who paid tuition, fees, and/or other costs to Duke University for (1) in-person classes for the Spring 2020 semester or a subsequent term and (2) who did not receive the benefits for which they paid.

46.     The following persons and entities are excluded from the Class: Defendant and its officers, directors, employees, subsidiaries, and affiliates; all judges assigned to this case and any members of their immediate families; and the parties' counsel in this litigation. Plaintiff reserves the right to modify, change, or expand the class definition, including by proposing additional subclasses, based upon discovery and further investigation.

47.     A class action is a superior means to ensure the fair and efficient adjudication of this case. The damages suffered by individual Class members are relatively small compared to the burden and expense of individual litigation of the claims described herein against the Defendant. Moreover, individualized actions would run the risk of creating inconsistent or contradictory judgments arising from the same set of facts and would increase the likely delay and expense to all parties involved and the Court itself. By contrast, by proceeding as a class action, the claims at issue can be adjudicated efficiently through economies of scale.

48.     **Numerosity.** In accordance with Fed. R. Civ. P. 23(a)(1), the members the proposed Class are so numerous and geographically dispersed that individual joinder of all Class members is impracticable. Although the precise number of Class members is unknown presently to Plaintiff, the Class is presumed to number more than 15,000 people and is easily ascertainable through enrollment and financial records maintained by Defendants.

49.     **Commonality and Predominance.** In accordance with Fed. R. Civ. P 23(a)(1) and (b)(3), this action involves questions of law and fact common to the Class that predominate

over any individual questions specific to any Class member. These include:

   a. whether Defendant accepted money from the Class;

   b. whether Defendant retained money from the Class for services they did not rendered, or only partially rendered;

   c. whether Defendant entered into a contract with the Class;

   d. whether Defendant breached its contract with the Class;

   e. whether Defendant benefited from the money it accepted from the Class;

   f. whether the educational and other services Defendant provided to the Class were commensurate with the value;

   g. whether certification of the Class is appropriate under Fed. R. Civ. P. 23;

   h. whether Class members are entitled to declaratory, equitable, or injunctive relief, and/or other relief; and

   i. the amount and nature of relief to be awarded to Plaintiff and the other Class members.

50. **Typicality.** Pursuant to Fed. R. Civ. P. 23(a)(3), Plaintiff's claims are typical of the other Class members' claims because Plaintiff and the other Class members each paid for certain costs associated with the Spring 2020 semester but were not provided the services that those costs were meant to cover. Each suffered damages in the form of their lost tuition, fees, and other monies paid to Defendant, and the claims all arise from the same Duke practices and course of conduct. There are no defenses available that are unique to the Plaintiff.

51. **Adequacy of Representation.** In accordance with Fed. R. Civ. P 23(a)(4), Plaintiff is an adequate Class representative because his interests do not conflict with the interests of the other proposed Class members. Moreover, Plaintiff has retained counsel competent and experienced in complex class action litigation, and he intends to prosecute this action vigorously on behalf of his fellow Class members. Plaintiff has no interests that are antagonistic to those of the Class and he will fairly and adequately protect the proposed Class'

13

rights along with counsel.

## COUNT I

### Breach of Contract

52. Plaintiff repeats and alleges the allegations in Paragraphs 1-51, above, as if fully alleged herein.

53. Plaintiff brings this claim individually and on behalf of the other members of the Class.

54. Plaintiff and the other members of the Class entered into binding contracts with Defendant, which provided that Plaintiff and the other members of the Class would pay tuition and fees, to Duke, in exchange for on-campus educational, social, and other experiences and access to facilities.

55. As part of their contracts with Duke, and, in exchange for adequate consideration that Plaintiff and members of the proposed Class provided, Defendant promised to provide educational and campus services and a meal plan during the Spring 2020 semester.

56. Defendant failed to provide the services that it was obligated to perform under its contracts with Plaintiff and the proposed Class. Defendant has retained tuition and fees paid by Plaintiff and the other members of the Class for the full 2020 Spring semester without providing them the promised benefits, instead providing those benefits for only a portion of the 2020 Spring semester.

57. By contrast, Plaintiff and the other members of the Class fulfilled their end of the bargain when they paid the monies due and owing for their full tuition and fees for the semester.

58. The tuition and fees that Plaintiff and the proposed Class paid were intended to cover in-person educational and extra-curricular services from January through May 2020.

14

Defendant, however, failed to provide the services due under the contracts for that entire time period, yet has improperly retained the funds Plaintiff and the proposed Class paid for their Spring 2020 tuition and fees without providing them the services and other benefits due under the contracts.

59. Plaintiff and members of the Class have suffered damages as a direct and proximate result of Defendant's breach, including being deprived of the education, experience, and services that they were promised and expected to obtain, and for which they have paid. They are entitled to damages including but not limited to prorated reimbursement of the tuition, fees, and other expenses that were collected by Defendant for services that Defendant failed to deliver fully.

60. Defendant's performance under the contracts is not excused because of COVID-19. Even if performance was excused or impossible, Defendant would nevertheless be required to return the funds received for services and/or goods that it did not provide.

## COUNT II

### Unjust Enrichment

61. Plaintiff repeats and alleges the allegations in Paragraphs 1-60, above, as if fully alleged herein.

62. Plaintiff brings this claim individually and on behalf of the other members of the Class in the alternative to the breach of contract claim brought in Count I.

63. Plaintiff and other members of the proposed Class conferred a benefit or enrichment on Defendant by paying tuition and mandatory fees to Defendant which were beneficial to Defendant, at the expense of Plaintiff and the other members of the Class.

64. Plaintiff and the other members of the Class paid tuition and mandatory fees and

15

did not receive the full benefit of their bargain from Defendant, thus resulting in their impoverishment.

65. Defendant has retained the benefit paid by Plaintiff and the Class despite its failure to provide the services for which the benefit was paid.

66. There is no justification or cause for Defendant's failure to return the portion of the tuition and fees that Defendant has unjustifiably kept for itself even though it failed to complete the services for which Plaintiff provided the funds to Defendant.

67. Accordingly, Defendant has been unjustly enriched and should pay as restitution a prorated portion of the funds for the Spring 2020 semester that Plaintiff and the proposed Class paid for tuition, required fees, and meal plan fees.

## COUNT III

### Conversion

68. Plaintiff repeat and re-allege the allegations in Paragraphs 1-67, above, as if fully alleged herein.

69. Plaintiff brings this claim on behalf of himself and on behalf of the Class.

70. Plaintiff and the other members of the Class have a right to the in-person educational and extra-curricular services that they were supposed to be provided in exchange for their payments to Defendant.

71. Defendant intentionally interfered with the rights of Plaintiff and the other members of the proposed Class when it retained fees intended to pay for on-campus classes, facilities and activities, while moving all classes to an online, remote learning format and discontinuing services and access to facilities for which Plaintiff and the members of the proposed Class had paid.

72. Defendant deprived Plaintiff and the other members of the Class of their fees or of the right to the services for which their fees were intended to be used.

73. Class members demanded the return of the prorated, unused fees for the remainder of the Spring 2020 semester.

74. Defendant's retention of the fees paid by Plaintiff and the other members of the Class without providing the services for which they paid deprived Plaintiff and the other members of the Class of the benefits for which the fees were paid. This interference with the services for which Plaintiff and the other members of the Class paid damaged Plaintiff and the other members of the Class in that they paid fees for services that were not and will not be provided.

75. Plaintiff and the other members of the Class are entitled to the return of prorated unused portion of the fees paid, through the end of the Spring 2020 semester

**PRAYER FOR RELIEF**

76. Plaintiff, on behalf of himself and on behalf of the members of the Class, respectfully requests that the Court enter judgment in their favor and against Defendant as follows:

    a. Certifying the Class as requested herein, designating Plaintiff as Class representative, and appointing the undersigned counsel as Class Counsel;

    b. Declaring that Defendant is financially responsible for notifying the Class members of the pendency of this suit;

    c. Declaring that Defendant wrongfully kept the monies paid by the Class;

    d. Awarding injunctive relief and restitution as permitted by law or equity;

    e. Awarding Plaintiff's reasonable attorneys' fees, costs, and expenses;

17

Case 1:20-cv-00480-WO-JEP   Document 1   Filed 06/01/20   Page 17 of 18

f. Awarding pre- and post-judgment interest on any amounts awarded; and

g. Awarding such other and further relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure on all causes of action so triable.


Dated: May 29, 2020

By:    */s/John J. Nestico*
John J. Nestico
SCHNEIDER WALLACE
COTRELL KONECKY LLP
6000 Fairview Road, Suite 1200
Charlotte, NC 28210
Tel: (510) 740-3946
Email: jnestico@schneiderwallace.com

Shanon J. Carson*
Glen L. Abramson*
BERGER MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel: (215) 875-3000
Email: scarson@bm.net
Email: gabramson@bm.net

*pro hac vice* forthcoming

E. Michelle Drake*
BERGER MONTAGUE PC
43 SE Main Street, Suite 505
Minneapolis, MN 55414
Telephone: (612) 594-5999
Email: emdrake@bm.net


*Attorneys for Plaintiff and the Class*